UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| LORETTA S.[1], | Case No.: 6:19-cv-00360-MK |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**KASUBHAI, Magistrate Judge:**

Plaintiff Loretta S. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Title II Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Both parties consent to jurisdiction by a U.S. Magistrate Judge. For the reasons set forth below, the Commissioner's decision should be reversed and remanded for immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

## BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits on February 11, 2015, alleging disability beginning January 12, 2015. Tr. 175-76. Her claim was initially denied on July 10, 2015, and upon reconsideration on December 15, 2015. Tr. 78-88, 91-105. Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Elizabeth Watson on November 22, 2017. Tr. 44-77, 120. The ALJ denied Plaintiff's application in a written decision dated January 24, 2018. *See* Tr. 13-37. Plaintiff sought review from the Appeals Council. *See* Tr. 173-74. The Appeals Council denied review of the ALJ's decision. Tr. 1-7. Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies her burden with respect to

the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4).  At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 404.1520(a)(4)(ii).  The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.*  At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.*  At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v).  If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.*  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

## DISCUSSION

In the present case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 12, 2015. Tr. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, a history of left shoulder strain, hypoparathyroidism, osteopenia, and obesity. Tr. 18-23.

At step three, the ALJ found that none of those severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23-24.

Prior to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined she could

> perform a limited range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently and sitting, standing, and/or walking each for about six hours in an eight-hour workday with normal breaks. In addition, the claimant must avoid even moderate exposure to workplace hazards.

Tr. 24-31.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a security guard. Tr. 31-32. Since the ALJ found Plaintiff was capable of performing her past relevant work she did not continue to step five. The ALJ then found that Plaintiff had not been under a disability, as defined by the Act, since January 12, 2015, the date the application was filed. Tr. 32.

Plaintiff seeks review by this Court contending that the ALJ erred in (1) improperly rejecting Plaintiff's subjective complaints; (2) improperly discounting treating doctors James Morris and Dane Dougherty's opinions; and (3) improperly evaluating Plaintiff's mental limitations which led to a flawed, incomplete residual functional capacity assessment. Pl.'s Opening Br. 15 (ECF No. 21).

Plaintiff requests this case be reversed and she be found disabled. Alternatively, Plaintiff requests the case be remanded for the Commissioner to reconsider evidence that was improperly discounted. *Id.* at 31. The Court addresses Plaintiff's arguments below.

///

///

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).  A general assertion the claimant is not credible is insufficient; instead, the ALJ must "state which … testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

The ALJ did not find evidence of malingering. *See* Tr. 13-37. Thus, the ALJ was required to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony. Here, the ALJ found "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25. In making this finding, the ALJ discredited Plaintiff's subjective symptom testimony for the following reasons: (1) Plaintiff made inconsistent statements regarding the severity of her impairments; (2) Plaintiff's impairments were not supported by objective medical evidence; (3) Plaintiff's impairments improved with treatment; and (4) Plaintiff's activities of daily living were inconsistent with her alleged symptoms. Tr. 25-29. The Court reviews the ALJ's reasons in turn.

### A.    Inconsistent Statements

The ALJ discredited Plaintiff's subjective symptom testimony after finding she made inconsistent statements regarding her impairments. Tr. 25-26. The ALJ noted two inconsistencies in Plaintiff's subjective symptom testimony. First, the ALJ noted that some of the impairments Plaintiff claimed were disabling, particularly her hypoparathyroidism, history of left shoulder strain, and osteoporosis, existed prior to her alleged onset date and "do not appear to have initially caused functional limitations lasting for more than a few months." Tr. 25. Second, the ALJ noted that Plaintiff told her employer that she expected to get a release to work from her physician on May 1, 2015, which the ALJ found suggested that Plaintiff "did not consider herself so functionally limited at that time as to be unable to engage in any work activity whatsoever." Tr. 26.

An ALJ may consider a range of factors in assessing Plaintiff's subjective symptom testimony "including…prior inconsistent statements concerning the symptoms." *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007)). Here, however, substantial evidence does not support the ALJ's findings.

First, although the ALJ correctly notes that some of Plaintiff's impairments existed prior to her alleged onset date of January 15, 2015, the ALJ fails to explain why this is inconsistent with Plaintiff's subjective symptom testimony. Plaintiff never denies that some of her impairments existed prior to her alleged onset date, and even testified that her difficulties with cognitive functioning began after a parathyroid gland surgery in 2008. Tr. 64. However, Plaintiff did testify that her memory fog "just continually got worse," and that her pain increased so she couldn't get into the trucks, street sweepers, or snowplows that were required for her to perform her job. Tr. 54, 64. Indeed, an independent review of the record shows Plaintiff exhibited symptoms related to her impairments prior to 2015, but these symptoms became progressively worse in 2015, *Cf.* Tr. 293, a January 8, 2014 treatment note describing Plaintiff's new left shoulder injury, Tr. 315, 353, a December 4, 2014 treatment note documenting Plaintiff's pain in her legs and hips and her memory fog; *see also* Tr. 351, a January 13, 2015 treatment note where Plaintiff reports to her treating doctor that feels she is completely unable to work because she is unable to cognitively function or operate machinery, and complains of pain in her feet, hips, back, and neck.

Next, the ALJ notes that in a June 5, 2015 letter regarding her employment status, Plaintiff reported to her employer that she expected to get a release to return to work. *See* Tr. 235. The ALJ found that this evidence "call[s] into question the overall severity of [Plaintiff's]

symptoms during the early part of the period at issue." Tr. 26.  This Court disagrees.  The June 5,

2015 letter the ALJ references notes that Plaintiff's application for Long Term Disability benefits

with Standard Insurance was denied and that a meeting was set to discuss the status of her

employment. *See* Tr. 235.  That Plaintiff reported to her employer that she expected to get a

release to return to work at an upcoming meeting with her physician at most suggests that

Plaintiff was attempting to continue her employment in some capacity in order to obtain income,

and not that she believed her symptoms were not severe.  Medical records during this time period

further support this as Plaintiff is noted to be tearful and upset about losing her job, and "worried

about finances." *See* Tr. 450, an August 12, 2015 where she expresses worry about her finances

since she has been unable to work since January 2015.  Additionally, Plaintiff was never released

to full time work and continued to report to treating physicians that she felt she was unable to

work due to her pain even after the meeting with her employer, thus further supporting Plaintiff's

claims regarding the severity of her symptoms. *See* Tr. 349, a May 8, 2015 treatment note that

Plaintiff was only released for part-time work; Tr. 423, a June 26, 2015 treatment note where she

reports to her treating physician that she does not feel that she can return to work because of

pain.  Therefore, Plaintiff's statement that she expected to be released to work is not inconsistent

with her symptoms.

### B.    Objective Medical Evidence and Embellishment

Next, the ALJ discredited Plaintiff's subjective symptom testimony finding that it was

not supported by the objective medical evidence. Tr. 26-27.  Additionally, the ALJ found that

Plaintiff exhibited "some embellishment with examination" noting in November 2015 that

Plaintiff exhibited only five out of eighteen fibromyalgia tender points, had "5/5 motor

strength/muscle bulk and tone" in her extremities, 5/5 grip testing in her hands, and had "grossly

intact sensory exam to light and deep touch," yet showed a "positive Waddell's rotation of the low back area caused by apparent pain." Tr. 27, citing Tr. 446-47.

Conflict between the alleged severity of a claimant's symptom testimony and the medical evidence of record is a valid basis for an ALJ to find the claimant's symptom testimony less than fully credible. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Here, the ALJ cites the following treatment notes to show the lack of objective medical evidence supporting Plaintiff's claims. First, the ALJ noted that medical findings in February 2015 showed "limited hip flexibility and range of motion along with bilateral foot pain" yet the ALJ also noted that later that month Plaintiff had a treatment note showing she was in no apparent distress, had a normal gait, and had no obvious signs of joint deformities. Tr. 26, citing Tr. 314. Next, the ALJ noted that although Dr. James Morris found Plaintiff exhibited 15 out of 18 positive tender points for fibromyalgia, his contemporaneous treatment notes also show "largely intact physical functioning despite the presence of these tender points" noting that Plaintiff had stable gait and station, functional standing and walking, and an unremarkable range of motion examination. Tr. 26, citing Tr. 415, 453. Next, the ALJ noted that Plaintiff had normal muscle strength and tone. Tr. 26. Finally, the ALJ cited a November 2015 treatment note where Plaintiff was noted to have "largely unremarkable findings" with her ability to transfer from a chair to an examination, that she had normal tandem and heel walking, no localized tenderness, was able to grip and hold objects to the palm of her hand with the first three digits, had no evidence of grip release, 5/5 motor strength, and grossly intact sensory exam. Tr. 27, citing Tr. 444-45.

Plaintiff argues that the ALJ failed to explain how these findings undermine "the alleged severity and limiting effects of [Plaintiff's] fibromyalgia," noting that the Ninth Circuit has previously recognized that fibromyalgia is diagnosed "entirely on the basis of the patients'

reports of pain and other symptoms." Pl.'s Opening Br. 18 (ECF No. 21) citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). This Court agrees.

As Plaintiff notes, fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id.* SSR 12-2P governs the evaluation of fibromyalgia and explains that symptoms will "wax and wane," and an individual experiencing fibromyalgia may experience "bad and good days." SSR 12-2P, at *6. Further "a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001)). "In light of this, [SSR 12-2P] warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'" *Revels*, 874 F.3d at 657, quoting SSR 12-2P.

Here, the ALJ found Plaintiff's fibromyalgia was a severe impairment at step two. Tr. 18. However, the ALJ discounted Plaintiff's subjective symptom testimony regarding the severity of her fibromyalgia symptoms based on a lack of objective medical evidence. Tr. 26-27. The ALJ's decision to discredit Plaintiff's testimony was in error and shows the ALJ failed to acknowledge the nature of fibromyalgia. Indeed, a longitudinal review of the record shows Plaintiff consistently reported pain, fatigue, and memory fog associated with her fibromyalgia, even before receiving an official diagnosis, despite findings of normal strength and reflexes. *See* Tr. 315, 351, 353, 423, 426, 433, 435, 450, 460, 463, 468, 474, 563-65, 571-72, 584. 589, 606, 642-45, 652, 673, 676. Although medical evidence showed no specific findings other than Plaintiff's subjective reports, because fibromyalgia is based entirely on a claimant's subjective symptom testimony, it is not unusual for medical records to lack specific findings. *See Benecke*, 379 F.3d

at 590.  Therefore, the ALJ's finding that there was a lack of objective medical evidence

supporting the severity of Plaintiff's impairments is not a clear and convincing reason to reject

Plaintiff's subjective symptom testimony.

### C.    Effective Treatment

Third, the ALJ discredited Plaintiff's subjective symptom testimony finding that her

symptoms improved with treatment. Tr. 26-27.  An ALJ may discount a claimant's testimony

based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016).  Here,

the ALJ noted a few instances of alleged improvement.  First, the ALJ noted that after Plaintiff

was restarted on thyroid hormone in May 2015 her "previously-reported paresthesias in her

thighs resolved." Tr. 26, citing Tr. 344.  Next, the ALJ noted that in September 2015, Plaintiff

was exercising, which "likewise shows improvement" since she previously indicated that she

"was unable to exercise or even to walk to the barn on her property." Tr. 27.  Third, the ALJ

noted that in October 2015, Plaintiff's endocrinologist noted that she was doing much better on

lidocaine infusions. *Id.*, citing Tr. 434. Finally, the ALJ found that Plaintiff "appears to have had

continued improvement of her symptoms with pain management treatment" noting that she "was

working on being more active and trying to reduce her weight." *Id.*, citing Tr. 596.

The ALJ's findings are not supported by the medical record.  First, although the May

2015 showed the paresthesias in Plaintiff's thighs resolved, the ALJ failed to note that in the

same treatment note her treating physician noted that Plaintiff still "continues to have pain in her

hips and thighs." Tr. 344.  Additionally, although Plaintiff experienced some relief from her pain

symptoms with injections, this relief did not last. *See* Tr. 423, a June 26, 2015 treatment note

where Plaintiff reports a steroid shot in her left hip did not work; Tr. 450, an August 12, 2015

treatment note where it was noted that a shot in her left leg for pain did not work; Tr. 468, a

September 11, 2015 treatment note where Plaintiff reports her pain has improved with a Lidocaine infusion; Tr. 480, a December 1, 2015 treatment note where Plaintiff reports that Lidocaine treatments are "helpful temporarily," but "not durable in its effect."

Next, Plaintiff's abilities to remain active do not support the ALJ's finding that Plaintiff's symptoms were effectively treated. The medical record shows in August 2015 Plaintiff was encouraged to remain active, but her activity was limited to 5 to 10-minute intervals three or four times a day, for five to six times a week. *See* Tr. 456. In fact, Plaintiff was specifically instructed to limit her activity to these "[s]maller sessions" noting that these were "likely safer than 30 minutes all at once. *Id*. This minimal activity does not contradict Plaintiff's testimony that she spends much of her day in a reclining chair due to pain. Finally, as noted above, fibromyalgia waxes and wanes and has no objective medical findings to support it. Therefore, when reviewing Plaintiff's entire medical record there is substantial evidence to show that Plaintiff's impairments were never effectively controlled with treatment, and she spent years returning for pain management treatment to control her symptoms.

### D.    Activities of Daily Living

Finally, the ALJ discredited Plaintiff's subjective symptom testimony finding that her activities of daily living were inconsistent with her alleged symptoms. Tr. 28-29. An ALJ may use a claimant's activities of daily living to determine symptom allegation credibility in order to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639. Here, the ALJ noted that Plaintiff is able to drive if needed, goes shopping with her cousin, makes half of her meals using a crockpot, regularly goes on walks near her home, and does her laundry when necessary. Tr. 28-29.

First, the ALJ fails to explain how these activities contradict Plaintiff's previous testimony. Although Plaintiff wrote in her Adult Function Report that she was able to perform these minimal activities, she also testified that she "pretty much stay[s] home" and "barely get[s] out of [her] recliner." *See* Tr. 63, 68-70. Plaintiff's minimal attempts to perform some daily activity are not inconsistent with her subjective symptom testimony. "One does not need to be utterly incapacitated or sit in bed all day in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

Second, the ALJ provided no explanation for which of Plaintiff's activities represent skills that are transferable to a work setting. As previously noted, Plaintiff spends a minimal amount of time performing these activities and participates in minimal exercise that entails 5 to 10-minute walking sessions a few times a day. It is unclear how her ability to perform at most, a couple hours of activity, translate to the ability to perform activities for an eight-hour workday.

Further, the Ninth Circuit has explained that:

> The critical differences between activities of daily living and activities in a fulltime job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Therefore, Plaintiff's participation in minimal activities of daily living is not a clear and convincing reason to reject her subjective symptom testimony.

Overall, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

///

13 – OPINION AND ORDER

**II. Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008).  Specific and legitimate reasons for rejecting a physician's opinion may include its

reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v.*

*Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

(9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995).  An ALJ errs by

rejecting or assigning minimal weight to a medical opinion "while doing nothing more than

ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's

conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ

effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725).  In other words, "[t]he ALJ must do more than offer his conclusions.  He must set

forth his own interpretations and explain why they, rather than the doctors', are correct."

*Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

"[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of an examining or treating physician."

*Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600

(opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### A.    Dr. James Morris

Dr. James Morris was Plaintiff's treating pain management physician from August 2015 through January 2017. Tr. 450, 563, 565, 580, 581, 596.  On August 12, 2015, Plaintiff had her first appointment with Dr. Morris. Tr. 450-58. During this appointment Plaintiff informed Dr. Morris that she experienced constant pain in her neck, legs, hips, low back, fingers, and thumbs. Tr. 450.  Dr. Morris reviewed Plaintiff's prior medical records and examined Plaintiff. Tr. 451-57.  Upon examination, Dr. Morris found that Plaintiff was positive for fifteen out of eighteen fibromyalgia tender points. Tr. 453.  Dr. Morris noted that Plaintiff suffers from hypocalcemia resulting in tetany, gastrointestinal dysfunction and pain, and fibromyalgia syndrome. Tr. 454. He also wrote that Plaintiff experiences "anxiety, depression, vocational disability, financial concerns, plus degenerative disc disease, arthropathy and obesity." *Id*.  He wrote that "[i]n his opinion, she is disabled by the combined conditions she experiences." *Id*.

On September 22, 2015, Dr. Morris wrote a letter summarizing Plaintiff's condition. Tr. 415.  He noted that Plaintiff described a "7 year history of global musculoskeletal aches and pains, progressive fatigue, and minimal response to standard medical care to date." *Id*. Again, Dr. Morris noted that Plaintiff experienced 15 out of 18 positive tender points and that she had multilevel degenerative disc and spine disease. *Id*.  Dr. Morris diagnosed Plaintiff with severe fibromyalgia syndrome with moderate degenerative spine disease and resulting lumbalgia. *Id*. Overall, Dr. Morris found Plaintiff was disabled, noting that she would be unable to sit more than 2 hours, stand more than an hour, walk more than an hour, and must change position at least every 15-20 minutes. *Id*.  Dr. Morris also wrote that Plaintiff's condition would cause common

flare ups which would last one to three days and would prevent her from performing "any meaningful work activities an estimated 3 or 4 days per month." *Id*.

Dr. Morris' continued to treat Plaintiff for her pain through 2017. Tr. 460-81, 561-97. Over the course of treating Plaintiff, Dr. Morris's treatment notes showed continuing pain, tender points, and difficulty sleeping. *Id*.

Dr. Morris' medical opinion conflicted with the opinions of reviewing doctors, Dr. Martin Kehrli and Dr. Richard Alley, so the ALJ was required to provide a specific and legitimate reason to reject Dr. Morris' medical opinion. *See* Tr. 85-86, 101-03; *see also Garrison*, 759 F.3d at 1012, (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") Here, the ALJ gave Dr. Morris' medical opinion "little weight" and addressed his opinions in two parts, specifically addressing Dr. Morris' opinion from August 2015 and September 2015, and second, addressing Dr. Morris' opinion from December 2015 to January 2017. Tr. 30. The Court reviews each part of the ALJ's opinion in turn.

First, the ALJ discredited Dr. Morris' opinion from August 2015 and September 2015 for the following reasons: (1) Dr. Morris' opinion that Plaintiff was disabled is a finding reserved to the Commissioner; (2) Dr. Morris' opinion was based on a limited number of appointments and was largely based on Plaintiff's subjective complaints; and (3) Dr. Morris' treatment notes were inconsistent with "largely intact physical functioning." *Id*.

The ALJ correctly noted that determinations of disability are reserved to the Commissioner of Social Security. *Id*. Under 20 C.F.R. § 404.1527(d), an opinion that you are disabled is not considered a medical opinion under the Act. 20 C.F.R. § 404.1527(d). However,

the ALJ must nonetheless consider the opinion along with "all of the medical findings and other evidence that support a medical source's statement that you are disabled." *Id*. Therefore, the ALJ was still required to provide legally sufficient reasons to reject the remaining parts of Dr. Morris' medical opinion.

Next, the ALJ discredited Dr. Morris' medical opinion from August 2015 and September 2015, finding this opinion was based on "only a limited number of appointments" as Plaintiff only began treatment with Dr. Morris in mid-August of 2015, and his opinion was based largely on Plaintiff's subjective complaints. Tr. 30. A specific and legitimate reason for rejecting a treating physician's opinion is that the opinion is premised on a claimant's subjective complaints, which the ALJ had properly discredited. *Fair*, 885 F.2d at 605; *Morgan*, 169 F.3d at 602; *Batson*, 359 F.3d at 1195. However, if the physician relies on Plaintiff's subjective complaints that are not discredited by the ALJ, or supports his opinion with his own observations, then this is not a legally sufficient reason to discredit that medical provider's medical opinion. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008).

Plaintiff argues that the ALJ erred in discrediting Dr. Morris' opinions when she found that Dr. Morris' findings were based on a limited number of appointments and were based on Plaintiff's subjective complaints, noting that Dr. Morris based his findings not only on Plaintiff's subjective symptom testimony alone, but instead conducted his own independent testing and reviewed Plaintiff's prior medical records. Pl.'s Opening Br. 22 (ECF No. 21). Indeed, although Dr. Morris documented Plaintiff's subjective complaints regarding her symptoms, he also reviewed Plaintiff's past medical records and conducted a physical examination of Plaintiff in order to determine the severity of her symptoms. *See* Tr. 451, 453-57. Therefore, Dr. Morris' medical opinion was neither based on a limited number of appointments, or entirely on

Plaintiff's subjective symptoms testimony as the ALJ suggests.  Therefore, this was not a specific and legitimate reason to discredit Dr. Morris' medical opinion from August 2015 and September 2015.

Finally, the ALJ discredited Dr. Morris' 2015 medical opinion finding that his treatment notes were inconsistent with Plaintiff's "largely intact physical functioning," "stable and functional standing and walking" and an "unremarkable range of motion exam." Tr. 30.  The ALJ's finding is not supported.  As noted above, Plaintiff suffers from fibromyalgia, a rheumatic disease that the Ninth Circuit recognized has symptoms that are entirely subjective and is diagnosed entirely based on a patient's reports of pain and other symptoms. *See Rollins*, 261 F.3d at 855; *Benecke*, 379 F.3d at 589.  Further, the Ninth Circuit has recognized that "a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663, quoting *Rollins*, 261 F.3d at 863 (Ferguson, J., dissenting) (quoting Yunus, *supra*, at 1260).  Therefore, the ALJ's decision to discredit Dr. Morris' opinion based on Plaintiff's intact physical functioning, stable and functioning standing and walking, and unremarkable range of motion was in error as it shows the ALJ's misunderstanding of the nature of fibromyalgia and its diagnosis. Dr. Morris found Plaintiff exhibited 15 out of 18 tender points on examination and diagnosed her fibromyalgia. Tr. 453.  Additionally, as noted above, the longitudinal record shows a history of pain for numerous years.  Given Plaintiff's diagnosis of fibromyalgia, the ALJ's finding that Dr. Morris' medical opinion was inconsistent with Plaintiff's intact physical functioning was not a specific and legitimate reason to discredit Dr. Morris' medical opinion.

Next, the Court addresses the ALJ's findings regarding the second part of Dr. Morris' medical opinion.  Here, the ALJ discredited Dr. Morris' remaining medical opinion that Plaintiff

was disabled from December 2015 to January 2017, overall finding that Dr. Morris' opinion was "largely inconsistent" with the record as a whole which show "overall improvement of the claimant's symptoms with ongoing treatment over the course of the longitudinal period at issue." Tr. 31.  As noted above, the record does not show "overall improvement" as the ALJ suggests as Plaintiff continued to experience symptoms even after receiving treatment. *See* Tr. 423, 450, 468, 480.  Accordingly, this is not a specific and legitimate reason the ALJ could use to discredit Dr. Morris' medical opinion.

Finally, the ALJ discredited Dr. Morris medical opinion regarding Plaintiff's abilities in December 2015 through January 2017 noting that Dr. Morris suggested that Plaintiff "should maintain weight reduction efforts and engage in regular exercise." Tr. 31. The ALJ found that this recommendation "is indicative of an overall greater level of physical functioning than otherwise indicated by Dr. Morris'" opinions. *Id*.  It is a specific and legitimate reason to discredit a physician's opinion when the opinion is incongruent to the physician's medical records. *Tommasetti*, 533 F.3d at 1041.  Here, however, the ALJ's findings are not supported by substantial evidence in the record.  As noted above, although Dr. Morris encouraged Plaintiff to engage in regular exercise, the exercise that he recommended was walking, and for limited 5 to 10-minute sessions, three to four times a day, for five to six days a week. *See* Tr. 456.  Dr. Morris specifically noted that these smaller sessions were "likely safer than 30 minutes all at once." *Id*.  This limited exercise routine is not inconsistent with the remainder of Dr. Morris' findings.  Overall, the ALJ failed to provide specific and legitimate reasons to discredit Dr. Morris' medical opinion.

///

///

B.    Dr. Dane Dougherty

Dr. Dane Dougherty was Plaintiff's treating rheumatologist who saw Plaintiff for her fibromyalgia and osteoarthritis from September 2016 through August 2017. Tr. 642-57.  Over the course of treating Plaintiff, Dr. Dougherty noted joint pain, muscle tenderness, headaches, memory loss, excessive worry, anxiety, depression, and difficulty falling asleep. Tr. 644, 648, 651, 656.  In an early treatment note from September 27, 2016, Dr. Dougherty noted that Plaintiff had a "history of sexual and physical abuse as a child" noting that she "has struggled with depression and anxiety in a chronic and recurrent fashion." Tr. 654.

In his August 24, 2017 treatment note, Dr. Dougherty wrote that Plaintiff had been "in good health until 2008 when she developed hyperparathyroidism." Tr. 642.  Dr. Dougherty noted that Plaintiff began experiencing soft tissue pain which "extend[ed] from her neck to her shoulders, lower back, thighs and knees in a generalized distribution," and arthralgias in her hands. *Id*.  Dr. Dougherty noted that Plaintiff had "fatigue, cognitive clouding with impaired attention, poor sleep and anxiety with low mood." *Id*.  He also noted that Plaintiff reported that her symptoms became progressively worse over a period of five years, and that she was eventually diagnosed with fibromyalgia. *Id*.  Dr. Dougherty also wrote that at Plaintiff's previous appointment in March 2017 she "continue[d] to have pronounced fatigue, widespread pain involving her joints and muscle" and that "[h]er symptoms significantly limit her mobility and physical stamina." *Id*.

Upon examination on August 24, 2017, Dr. Dougherty found Plaintiff suffered from severe fibromyalgia and chronic depression. Tr. 645.  He noted that Plaintiff experienced "generalized pain, allodynia, fatigue, cognitive clouding and memory problems all consistent with fibromyalgia." *Id*.  He wrote that Plaintiff was "having difficulty with routine household

tasks and at times self care" and that she described "very easy fatigability with light activity." *Id*.

He also noted that Plaintiff described a need for "prolonged recovery from activities involving

extra physical exertion e.g. walking 20 minutes, sweeping." Tr. 642.  Dr. Dougherty noted

"trouble with memory, attention and concentration" which he wrote "significantly impair her

routine function." Tr. 645.  Overall, Dr. Dougherty wrote that he believed Plaintiff's

fibromyalgia symptoms would make it "very difficult for [Plaintiff] to adapt to any workplace

environment." *Id*.  Additionally, Dr. Dougherty noted that Plaintiff's depression caused her to

experience "low mood, psychomotor slowing, poor sleep, and anxiety" and that she was

"intolerant to trials of SSRIs and Cymbalta." *Id*.

Plaintiff essentially argues that the ALJ erred when she considered Dr. Dougherty's

medical opinion at step two of the sequential evaluation but failed to consider Dr. Dougherty's

medical opinion when determining Plaintiff's RFC. Pl.'s Opening Br. 24-26 (ECF No. 21).

Specifically, Plaintiff argues that the ALJ's evaluation and rejection of Dr. Dougherty's medical

opinion when evaluating the paragraph B criteria at step two of the sequential analysis "conflates

[Plaintiff's] mental disorders with her rheumatic disease," noting that Dr. Dougherty "did not

assess limitations stemming from psychiatric disorders alone." Pl.'s Opening Br. 25 (ECF No.

21).  Plaintiff continues her argument noting that Dr. Dougherty assessed limitations "stemming

from [Plaintiff's] severe fibromyalgia" including symptoms like fatigue, cognitive and memory

problems, depression, and anxiety disorder, and these symptoms relate to "the cognitive impact

and fatigue associated with fibromyalgia, not psychological disorders. Pl.'s Opening Br. 25-26

(ECF No. 21).  The Commissioner argues that the ALJ provided legally sufficient reasons for

discounting Dr. Dougherty's medical opinion, noting that the ALJ found "little objective support

in his treatment notes for mental limitations." Def.'s Br. 13 (ECF No. 23.)  This Court finds
Plaintiff's argument persuasive.

Here, the ALJ reviewed Dr. Dougherty's medical opinion at step two of the sequential
evaluation process but did not discuss his medical opinion anywhere else in her decision. *See* Tr.
23; *see also* Tr. 24-31.  Overall, the ALJ gave Dr. Dougherty's medical opinion "little weight."
Tr. 23.  In discrediting Dr. Dougherty's medical opinion, the ALJ found it was based "in large
part on the claimant's subjective complaints regarding her mental functioning," yet found "little,
if any objective support for such limitations in Dr. Dougherty's treatment notes." *Id*.  Second, the
ALJ found Dr. Dougherty's medical notes were "inconsistent" with the fact that Plaintiff "does
not appear to have presented for ongoing treatment of psychological symptoms" even after Dr.
Dougherty advised Plaintiff to seek care. *Id*.  The ALJ found this "lack of compliance" with
treatment "strongly suggests" that Plaintiff's mental health symptoms "have not been as
functionally limiting as indicated." *Id*.

Dr. Dougherty's medical opinion conflicted with the opinions of reviewing state agency
psychological consultants, Dr. Megan Nicoloff and Dr. Irmgard Friedburg, so the ALJ was
required to provide a specific and legitimate reason to reject Dr. Dougherty's medical opinion.
*See Garrison*, 759 F.3d at 1012, (quoting *Lester*, 81 F.3d at 830) ("If a treating or examining
doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by
providing specific and legitimate reasons that are supported by substantial evidence.")

As noted above, Plaintiff argues the ALJ failed to properly consider Dr. Dougherty's
medical opinion regarding the severity of Plaintiff's fibromyalgia, noting that the ALJ only
reviewed Dr. Dougherty's medical opinion with respect to her mental limitations at step two, but
failed to consider Dr. Dougherty's role as Plaintiff's treating rheumatologist, and the limitations

he noted from Plaintiff's fibromyalgia when evaluating Plaintiff's RFC. Pl.'s Opening Br. 24-26 (ECF No. 21.)  This Court agrees.  Plaintiff suffered from fibromyalgia, "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels*, 874 F.3d at 656, citing *Benecke*, 379 F.3d at 589.  As Plaintiff's treating rheumatologist, Dr. Dougherty had specialized knowledge that was relevant for the ALJ to consider when evaluating the severity of Plaintiff's fibromyalgia.  *See Revels*, 874 F.3d at 654, citing *Benecke*, 379 F.3d at 594 n.4. ("A doctor's specialty is especially relevant with respect to diseases that are 'poorly understood' within the rest of the medical community"); *see also* 20 C.F.R. 404.1527(d)(5).  The ALJ's failure to consider Dr. Dougherty's medical opinion, as Plaintiff's treating rheumatologist, when evaluating Plaintiff's RFC was in error.

Additionally, this Court finds the ALJ's reasons for discrediting Dr. Dougherty's medical opinions regarding Plaintiff's fibromyalgia symptoms are not legally sufficient to discredit Dr. Dougherty's entire medical opinion.  The ALJ discredited Dr. Dougherty's medical opinions noting that they were "based on large part on the claimant's subjective complaints regarding mental functioning" yet found "there is little, if any objective support for such limitations in Dr. Dougherty's treatment notes." Tr. 23.  Additionally, the ALJ discredited Dr. Dougherty's medical opinion finding that Plaintiff failed to seek mental health treatment which "strongly suggests" that Plaintiff's psychological symptoms "have not been as functionally limiting as indicated" by Plaintiff. *Id.*  The ALJ fails to explain why these legally sufficient reasons for discrediting Dr. Dougherty's medical opinion regarding Plaintiff's mental health symptoms are also legally sufficient reasons for discrediting Plaintiff's remaining fibromyalgia symptoms.  As Plaintiff argues, and this Court agrees, Dr. Dougherty described limitations beyond Plaintiff's mental health symptoms, specifically that she was severely limited by her pain symptoms. *See*

Tr. 644-45, 648, 651-52, 656. As the ALJ failed to discredit Dr. Dougherty's medical opinion

regarding Plaintiff's remaining fibromyalgia symptoms, this Court finds the ALJ erred in

discrediting Dr. Dougherty's medical opinion and failing to address Dr. Dougherty's medical

opinion when evaluating Plaintiff's RFC.

**III. Plaintiff's RFC**

The RFC reflects the most an individual can do. 20 C.F.R. § 404.1545. In formulating an

RFC, the ALJ must consider all medically determinable impairments, including those that are not

"severe," and evaluate "all of the relevant medical and other evidence," including the claimant's

testimony. *Id*.; SSR 96-8p, *available at* 1996 WL 374184. An ALJ may rely on the testimony of

a VE to determine whether a claimant retains the ability to perform past relevant work at step

four, or other work in the national or regional economy at step five. *Osenbrock v. Apfel*, 240

F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those limitations that are

supported by substantial evidence in the hypothetical posed to a VE. *See id*. at 1163-65.

"Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). In other words, limitations supported by

substantial evidence must be incorporated into the RFC and, by extension, the dispositive

hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-65.

Plaintiff argues the ALJ erred in determining her RFC by failing to incorporate the mental

limitations documented by Dr. David Northway and Dr. David Freed relating to Plaintiff's medically

determinable mental impairments of neurocognitive disorder, PTSD, major depressive disorder,

generalized anxiety disorder, and unspecified somatic symptom disorder. Pl.'s Opening Br. 27 (ECF

No. 21). Specifically, Plaintiff argues that although the ALJ dismissed these impairments as non-

severe, she failed to consider the limitations related to these medically determinable impairments in

the RFC. Pl.'s Opening Br. 27-28 (ECF No. 21).

Here, the ALJ found Plaintiff had the medically determinable mental impairments of neurocognitive disorder, posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, and unspecified somatic symptom disorder, but did not find any of these impairments were severe at step two. Tr. 19.  When formulating Plaintiff's RFC, the ALJ only briefly mentioned Plaintiff's medically determinable mental impairments noting that Plaintiff's neuropsychological testing in July 2016 showed "largely intact mental functioning." Tr. 28.  Otherwise, the ALJ made no specific mention of Plaintiff's medically determinable mental impairments when evaluating Plaintiff's RFC. *See* Tr. 24-31.

The Commissioner argues that the ALJ did not err in her evaluation of Plaintiff's mental impairments, noting that Plaintiff "appears to focus on the fact that the ALJ's analysis" regarding Plaintiff's mental impairments "primarily appears in the section of the decision addressing the ALJ's step-two findings." Def. Br. 15 (ECF No. 23).  Further, the Commissioner argues that a reviewing court must affirm "so long as 'the agency's path may reasonably be discerned." Def. Br. 15 (ECF No. 23), citing *Molina v. Astrue,* 674 F.3d 1104, 1121 (9th Cir. 2012).  This Court agrees.  Although the ALJ failed to specifically address Plaintiff's mental impairments when determining her RFC, the ALJ reasonably addressed Plaintiff's mental impairments and the opinions of Dr. David Northway and Dr. David Freed when evaluating Plaintiff's mental impairments.

First, the ALJ evaluated the medical opinion of examining psychologist Dr. David Northway. Tr. 22.  The ALJ noted that Dr. Northway conducted a comprehensive psychological examination of Plaintiff in July 2016. *Id*.  During the examination Dr. Northway found Plaintiff had intact attention, concentration, and mental efficiency. Tr. 555.  He also found that Plaintiff had some "peculiarities in thinking" noting that her thought process "at times, could be marked by confusion and distractibility." Tr. 556.  Additionally, he noted that she was intellectually in the "average range" and her mental efficiency and processing speed were in the average range with "some tasks…in the

low average to mildly impaired range." Tr. 558.  Overall, Dr. Northway found that Plaintiff was

"only marginally capable of even simple activities of daily living." Tr. 559.

The ALJ gave Dr. Northway's medical opinion "little weight" finding that his medical

opinion was "largely inconsistent with contemporaneous objective findings" that showed a full

scale IQ score of 94, and that Plaintiff's activities of daily living showed "largely intact

cognitive, social, and adaptive functioning." Tr. 22.  Inconsistency between a treating provider's

opinion and a claimant's daily activities may constitute a specific and legitimate reason to

discount that opinion. *Ghanim*, 763 F.3d at 1162.  Additionally, the ALJ found Dr. Northway's

findings were "largely inconsistent" with his own conclusions, noting that neurocognitive tests

showed Plaintiff was intellectually in the average range. Tr. 22.  It is a specific and legitimate

reason to discredit a physician's opinion when the opinion is incongruent to the physician's

medical records. *Tommasetti*, 533 F.3d at 1041.  Overall, the ALJ provided legally sufficient

reasons for discrediting Dr. Northway's medical opinion regarding Plaintiff's mental health

limitations.

Next, the ALJ evaluated the medical opinion of Dr. David Freed. Tr. 22.  The ALJ noted

that Dr. Freed conducted a neuropsychological evaluation of Plaintiff in August 2016. *Id*.

During his examination, Dr. Freed noted that Plaintiff scored 28 out of 30 on a mini mental

status examination and was mildly impaired in her memory. Tr. 546.  Dr. Freed also noted some

problems with verbal fluency, and impairments in attention. Tr. 550.  Additionally, Dr. Freed

wrote that Plaintiff suffered from "severe mood and cognitive symptoms" noting that she

reported suffering from "memory problems, chronic pain, panic attacks, and depressed mood."

*Id*.  Overall, Dr. Freed believed Plaintiff's symptoms would "interfere with [Plaintiff's] ability to

interact with the general public, co-workers, and supervisors" noting that her symptoms were "severe in nature." *Id.*

The ALJ gave Dr. Freed's medical opinion "little weight" noting that, like the opinion of Dr. Northway, Dr. Freed's medical opinions were "largely inconsistent" with objective findings noted at the time of Dr. Freed's medical opinion, notably that Plaintiff received a full scale IQ score of 104, and although Plaintiff exhibited "some abnormalities in terms of mental functioning such as depressed mood with restricted range of affect," that she also had "appropriate groom and hygiene, was cooperative, and scored 28 out of 30 on [a] mini mental status exam." Tr. 22-23. Indeed, records support the ALJ's findings. *See* Tr. 565, 571-72, 579, 586, 590, 595, 602.

As Plaintiff correctly notes, the ALJ failed to specifically address Plaintiff's mental impairments when addressing her RFC. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." *Carmickle*, 533 F.3d at 1164 citing Social Security Ruling ("SSR") 96–8p (1996). "Even though a non-severe 'impairment[ ] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'" *Id.* Although the ALJ failed to address Plaintiff's mental limitations outside of the step two analysis, the Court finds the ALJ provided legally sufficient reasons to discredit the medical opinions regarding Plaintiff's mental health symptoms and overall found that her mental impairments caused no more minimal limitations. "Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Molina,* 674 F.3d at 1121, citing *Alaska Dep't of Envtl. Conservation v. EPA,* 540 U.S. 461, 497, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (internal

quotations omitted).  The ALJ's reasoning for finding Plaintiff had no mental limitations is reasonably discernable to this Court.  Therefore, this Court finds no error with respect to the ALJ's evaluation of Plaintiff's mental limitations.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke*, 379 F.3d at 593). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*  The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F.3d at 876 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)).  The reviewing court should decline to credit testimony when "outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for: (1) discrediting Plaintiff's subjective symptom testimony; (2) discrediting Dr. Morris' medical opinion; and (3) discrediting Dr. Dougherty's medical opinion with respect to Plaintiff's fibromyalgia symptoms.

As to the second prong, there are no outstanding issues that must be resolved, and the record has been fully developed.  The record reflects that Plaintiff suffers from fibromyalgia that causes debilitating pain and significantly limits her daily activities.

Finally, the third prong is met because it is clear from the record that if the ALJ fully credited Plaintiff's subjective symptom testimony, Dr. Morris' medical opinion, and Dr. Dougherty's medical opinion regarding Plaintiff's fibromyalgia, the Commissioner would be required to find Plaintiff disabled.  On November 22, 2017, the VE testified that if a person is only able to sit no more than two hours, stand more than an hour, walk more than an hour, and must change their position every 15 to 20 minutes that this hypothetical person is only a "part-time worker." Tr. 72.  Crediting Dr. Morris' medical opinion that Plaintiff is unable to sit more than 2 hours, stand more than an hour, and walk more than an hour would prevent her from maintaining competitive full-time employment. *See* Tr. 415.  Additionally, the VE testified that if a person misses more than two days per month for semi-skilled or skilled work that this person would not be able to maintain employment. *See* Tr. 73.  Crediting Dr. Morris' medical opinion that Plaintiff's condition would cause common flare ups which would last one to three days and would prevent her from performing "any meaningful work activities an estimated 3 or 4 days per month" would also prevent Plaintiff from maintaining competitive employment. *See* Tr. 415. Finally, the VE testified that if a person has breaks that exceed 10 percent of the workday in quantity or duration they would be unable to maintain employment. Tr. 73.  Crediting Dr.

Dougherty's medical opinion that Plaintiff needs a "prolonged recovery from activities involving extra physical exertion e.g. walking 20 minutes, sweeping," would further prevent Plaintiff from maintaining employment. *See* Tr. 642.

For the reasons set forth, the Commissioner's decision is reversed and this matter is remanded for the immediate calculation and payment of benefits.


DATED this <u>7th</u> day of August 2020.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge